**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                                           :
**MOODY NATIONAL FFI MEADOWLANDS**        :
**MT, LLC.,**                                              :
                                                           :
    **Plaintiff,**                     :  Civ. No. 12-2124 (JLL)
                                                           :
  v.                                             :
                                                           :  **REPORT AND**
**DANNETTA GAGER and ERROLL SMITH,**      :  **RECOMMENDATION**
                                                           :
    **Defendants.**                    :
_____    :

**HAMMER, United States Magistrate Judge**

**I. INTRODUCTION**

   This matter is before the Court by way of plaintiff Moody National FFI Meadowlands

MT, LLC.'s ("Moody" or "plaintiff") motion for entry of a default judgment against Dannetta

Gager ("Gager") and Erroll Smith ("Smith") (collectively, "defendants") pursuant to Fed. R. Civ.

P. 55(b).  Specifically, plaintiff seeks entry of a default judgment against defendants, jointly and

individually, in the amount of $562,389.05, plus interest, costs, disbursements, and fees.

Pursuant to Local Civil Rule 72.1, the Honorable Jose L. Linares, United States District Judge,

referred the motion to this Court for Report and Recommendation.  For the reasons set forth

below, the Undersigned respectfully that plaintiff's motion be granted solely as to liability.

## II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

For purposes of the motion for entry of a default judgment, the Court must "accept as true the well-pleaded factual allegations of a plaintiff's complaint, but need not accept the party's legal conclusions."  Wong v. Am. Credit & Collections, LLC, No. 11-4428 (FLW), 2012 U.S. Dist. LEXIS 168446, at *3 (D.N.J. Nov. 28, 2012) (citing E. Constr. & Elec., Inc. v. Universe Techs., Inc., No. 10-1238 (RBK), 2011 U.S. Dist. LEXIS 1600, at *7 (D.N.J. Jan. 6, 2011)); see Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990).

Plaintiff is a limited liability company that operated a hotel known as the Fairfield Inn at 850 Route 120, East Rutherford, New Jersey (the "Hotel").  (Compl. ¶¶ 1, 6, Apr. 9, 2012, ECF No. 1).  Plaintiff alleges that defendants are Canadian citizens residing at 15 Cornell Meadows Avenue, Suite A208, Markham, Ontario, Canada ("Cornell Meadows address"), and that they arrived at the Hotel on July 30, 2011, for a week vacation.  (Id. ¶¶ 2–3, 7).  Plaintiff asserts that at the time defendants checked into the Hotel, defendant "Gager provided [p]laintiff with her credit card and signed documentation accepting responsibility for all hotel room charges and incidentals incurred during [their] stay at the [Hotel], including but not limited to, any property damage caused by [d]efendants to the room."  (Id. ¶ 8).  Plaintiff alleges that on July 30, 2011, while defendants were alone in their Hotel room, the sprinkler head in their room discharged, causing extensive property damage, lost income, and interruption of business in the total amount of approximately $475,000.  (Id. ¶¶ 9–10).

Based on these well-pleaded factual allegations, plaintiff filed a three-count Complaint on April 9, 2012, alleging (1) negligence on the part of defendants because the sprinkler head discharged as the direct and proximate result of their failure to exercise reasonable care to protect

2

plaintiff's property; (2) breach of contract because, upon checking into the Hotel, defendants

entered into a contract with plaintiff in which they "expressly and/or impliedly agreed to occupy

the [Hotel] in a manner to avoid loss or damage" to the Hotel property, yet still caused carelessly

the sprinkler head in their room to discharge and to cause extensive water damage to plaintiff's

property; and (3) violation of the Hotel and Multiple Dwelling Law, N.J.S.A. 55:13A-1 et seq.

and N.J.A.C. 5:10-2.2, which imposes vicarious liability on Gager, whose credit card secured the

Hotel room, for the conduct of her guest, defendant Smith.  (Id. ¶¶ 11–25).  The Court issued a

summons as to defendants on April 10, 2012.  (Summons, ECF No. 3).

Because defendants failed to answer, file a motion, or otherwise appear in the proceeding,

plaintiff filed a motion for entry of default on August 6, 2012.  (Mot. for Entry of Default, Aug.

6, 2012, ECF No. 5).  In making its motion for entry of default, plaintiff relied on the

certification of Robert B. Meola, Esq., counsel for plaintiff, who stated that plaintiff retained

Borg Process Servers, Inc. ("Borg") of Toronto, Ontario, to effect personal service of the

Summons and Complaint on defendants at their Cornell Meadows address.  (Meola Certification

¶ 4, Aug. 6, 2012, ECF No. 5-1).  Meola certified that a Borg process server tried to serve

defendants at the Cornell Meadows address on May 8, 2012, and gained access past the main

lobby by virtue of defendants "buzzing" him in.  (Id. ¶ 6).  However, Meola stated that

defendants refused to open their front door to physically accept service of process.  (Id.).  Meola

said that a Borg process server again tried to serve defendants at the Cornell Meadows address on

May 9, 2012, but could not gain access beyond the building's main lobby.  (Id. ¶ 7).  The process

server did, though, "receive[] an answering machine identifying the [d]efendants as the

inhabitants of the dwelling."  (Id.).  Meola certified that plaintiff made several additional

attempts to personally serve defendants, which all failed.  (Id. ¶ 8).  He stated that plaintiff then sought to serve defendants pursuant to the Hague Convention, but Nadine Auger of the Ontario Court of Justice was not able to confirm that service of process was personally effected on defendants.  (Id. ¶¶ 8–11).  Meola certified that plaintiff thereafter served defendants by simultaneous Regular Mail and International Registered Mail by letter dated June 29, 2012.  (Id. ¶ 12).  He said that defendants have refused to claim their individual International Registered Mail envelopes, but they received copies of the Summons and Complaint via Regular Mail because "those envelopes have not been returned as undeliverable."  (Id. ¶ 13).  As such, Meola certified that plaintiff effected service of process on defendants via Regular Mail.  (Id. ¶ 14).

The Clerk entered default against defendants on August 10, 2012.  On August 22, 2012, plaintiff filed a motion for default judgment as to Gager and Smith.  (Mot. for Default J., Aug. 22, 2012, ECF No. 7).  In support of that motion, plaintiff attached the certification of Robert Meola, who stated that plaintiff incurred property damage as a result of defendants' negligence in the total amount of $562,389.05.  (Meola Certification ¶ 4, Aug. 22, 2012, ECF No. 7-1).  Plaintiff also attached the affidavit of John Karmozyn, who is a Senior Property Adjustor, Commercial Market Property Claims, for Liberty Mutual Fire Insurance Company ("Liberty Mutual"), the property insurer and subrogee of plaintiff.  (Karmozyn Aff. ¶ 1, Aug. 22, 2012, ECF No. 7-2).  Karmozyn stated that Liberty Mutual issued a policy of property insurance to plaintiff, which was in effect on July 30, 2011.  (Id. ¶ 4).  Karmozyn analyzed the property loss under the insurance policy covered by Liberty Mutual and determined that plaintiff incurred damage in the total amount of $562,389.05 as a result of the sprinkler incident in defendants' Hotel room on July 30, 2011.  (Id. ¶¶ 5–8).

4

The Court denied without prejudice plaintiff's motion for default judgment because plaintiff's motion failed to include either a brief or a statement as to why no brief was necessary. (Order, Sept. 5, 2012, ECF No. 8).  In addition, the Court found it unclear from the Meola Certification whether service of process was properly effectuated on defendants.  (Id.).  The Court also determined that plaintiff had not set forth a legal or factual basis as to why it was purportedly entitled to $562,389.05 in damages, plus interest, costs, disbursements, and fees. (Id.).  The Court allowed plaintiff thirty days to file a corrected motion.  (Id.)

Accordingly, on October 4, 2012, plaintiff re-filed the instant motion for default judgment as to defendants in the amount of $562,389.05, plus interest, costs, disbursements, and fees. (Mot. for Default J., Oct. 4, 2012, ECF No. 9).  In support of its motion, plaintiff included a brief (ECF No. 9-1), the October 4, 2012, certification of Robert Meola with attached exhibits (ECF No. 9-2), and the August 22, 2012, affidavit of John Karmozyn (ECF No. 9-3).

With respect to the issue of service of process, Meola certified that on December 29, 2011, he sent a letter to defendants at the Cornell Meadows address notifying them that his firm represented plaintiff and had completed an investigation of the sprinkler head incident.  (Meola Certification ¶ 5, Oct. 4, 2012, ECF No. 9-2; Exh. A to Meola Certification).  In that letter, Meola informed defendants that the total property damage loss was approximately $450,000, and he suggested that they call his firm immediately and forward a copy of the letter to their insurance carrier "placing it on notice of a potential claim arising out of this loss."  (Exh. A to Meola Certification).  Meola advised defendants that if "we do not hear from you within ten (10) days of receipt of this letter, we will move forward with filing a lawsuit in New Jersey against both of you to seek recovery for the property damage, interest, attorneys' fees and costs incurred

as a result of the incident." (Id.).  Meola certified that Smith called him in response to the letter, denying both culpability and any knowledge as to whether he or Gager had insurance.  (Meola Certification ¶ 6, ECF No. 9-2).  Meola stated that several days later Elaine Gordon, Esq., called him in response to the December 29, 2011, letter, advising "that she was unsure whether she would be representing Ms. Gager in connection with the matter but [that] she was asked by the [d]efendants to respond to [Meola's] letter." (Id. ¶ 7).  Meola also said that he performed a title search, which confirmed that Gager owned the property located at the Cornell Meadows address. (Id. ¶ 8; Exh. B to Meola Certification).  Because he received no further communication from defendants or any alleged representative of defendants, plaintiff, as stated above, filed the Complaint on April 9, 2012.  Defendants have neither appeared in this proceeding nor opposed plaintiff's instant motion for entry of default judgment.[1]

## III.   DISCUSSION

### A.      Plaintiff Properly Effected Service of Process on Defendants

Federal Rule of Civil Procedure 55 governs the entry of default judgment.  However, before engaging in a Rule 55 analysis, a threshold issue is whether plaintiff properly effectuated service of process on Gager and Smith.  If plaintiff failed to effect service of process on each defendant, then entry of a default judgment is premature and unwarranted.  See United States v. One Toshiba Color TV, 213 F.3d 147, 156 (3d Cir. 2000) ("[T]he entry of a default judgment without proper service of a complaint renders that judgment void."); Gold Kist, Inc. v.

---

[1] As part of the instant motion, plaintiff filed a Certification of Service attesting that on October 4, 2011, plaintiff's counsel caused a copy of the motion papers to e served on defendants at the Cornell Meadows address via regular mail.  (Certification of Service, Oct. 4, 2012, ECF No. 9).

Laurinburg Oil Co., Inc., 756 F.2d 14, 19 (3d Cir. 1985) ("A default judgment entered when there has been no proper service of the complaint is, *a fortiori*, void, and should be set aside."). Plaintiff, moreover, bears the burden of proving sufficient service of process.  Emmanouil v. Mita Mgmt., LLC, No. 11-5575 (JAP), 2012 U.S. Dist. LEXIS 83642, at *8 (D.N.J. June 15, 2012); Grand Entm't Group v. Star Media Sales, 988 F.2d 476, 488 (3d Cir. 1993).

Generally, "[a] summons must be served with a copy of the complaint.  The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service."  Fed. R. Civ. P. 4(c)(1). Rule 4(m) establishes that a court – on motion or on its own after notice to the plaintiff – "must dismiss an action without prejudice . . . [i]f a defendant is not served within 120 days after the complaint is filed."  Here, 120 days have elapsed since plaintiff filed the Complaint on April 9, 2012.  As a result, the Court must dismiss without prejudice the Complaint if it finds that plaintiff has failed to properly effect service of process on defendants.

The controlling rule for service of process on individuals in a foreign country[2] is Fed. R. Civ. P. 4(f), which provides:

> **(f)** **Serving an Individual in a Foreign Country.** Unless federal law provides otherwise, an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served at a place not within any judicial district of the United States:
>
> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

---

[2] Gager and Smith are citizens and residents of Canada, and it appears, from the moving papers, that they are physically present in Canada.  (See, e.g., Certification of Robert Meola, Esq. in Support of Plaintiff's Motion for Entry of Default Judgment, Oct. 4, 2012, ECF No. 9-2, ¶¶ 5, 8 & Exh. B (property identification report); see also Compl. ¶¶ 2–3, Apr. 9, 2012, ECF No. 1).

(2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:

> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;

> (B) as the foreign authority directs in response to a letter rogatory or letter of request; or

> (C) unless prohibited by the foreign country's law, by:

>> (i) delivering a copy of the summons and of the complaint to the individual personally; or

>> (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

(3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

Here, plaintiff did not attempt initially to serve process on defendants pursuant to Fed. R. Civ. P. 4(f)(1); rather, it hired Borg to effect personal service of the Summons and Complaint on defendants at the Cornell Meadows address.  (Meola Certification ¶ 10, Oct. 4, 2012, ECF No. 9-2).  On four (4) separate occasions, a Borg representative went to the Cornell Meadows address to serve the Summons and Complaint on defendants; each time, however, he or she could not effectuate service of process.  (Id. ¶ 11; Exh. C to Meola Certification).[3]  Upon the failure of

---

[3] On May 8, 2012, Borg process server Cecil M. Clarke found no tenant names listed next to the apartment buzzers at Cornell Meadows.  (Exh. C to Meola Certification ¶ 2, ECF No. 9-2).  Clarke buzzed Suite A208, received no answer, and left a detailed message on the answering machine, which identified "Dannetta" as the occupant.  (Id.).  He also left his card in the lobby to the attention of Dannetta Gager and Erroll Smith.  (Id.).  On May 9, 2012, Borg process server Humberto Ampuero received no answer when he buzzed Suite A208, but, like Clarke, left a detailed message on "Dannetta's" answering machine and his card in the lobby.  (Id. ¶ 3).

(continued...)

8

Borg to personally serve defendants with the Summons and Complaint, plaintiff attempted to serve process in the manner in which it should have in the first instance – pursuant to Fed. R. Civ. P. 4(f)(1), by direction of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention").  (Meola Certification ¶ 13, ECF No. 9-2).

The Hague Convention is an international treaty that has been ratified by approximately twenty-three countries, including the United States and Canada.  See Department of State, Treaties in Force – January 1, 1985, 259 (1985).  The Hague Convention seeks to create an "'appropriate means to ensure that judicial and extrajudicial documents to be served abroad shall be brought to the notice of the addressee in sufficient time.'"  Eli Lilly & Co. v. Roussel Corp., 23 F. Supp. 2d 460, 470 (D.N.J. 1998) (quoting Hague Convention, Preamble, 20 U.S.T. 361, 362, T.I.A.S. No. 6638 (Nov. 15, 1965)).  Its provisions are mandatory, and "failure to comply voids the attempted service."  Id. (citing Volkswagenwerk Aktiengesellschaft v. Schlunk, 486

---

³(...continued)

Borg process server Gary Krolicki went to the Cornell Meadows address on May 16, 2012, "buzzed 208 and a woman answered.  Gary asked for Dannetta and the woman on the other end directly hung up on him."  (Id. ¶ 4).  He dialed again and his call went straight to voice message for "Dannetta."  (Id.).  Krolicki left a detailed message for Gager and Smith, but he was unable to gain access inside the building to approach Suite A208.  (Id.).  On May 26, 2012, Clarke again went to the Cornell Meadows address, buzzed Suite A208, and "spoke with the female occupant who informed [her] that she has never heard of neither Dannetta Gager nor Erroll Smith."  (Id. ¶ 5).  Clarke has been unable to procure telephone listings for Gager or Smith, and believes that they are avoiding service of process.  (Id. ¶¶ 6, 8).

As set forth in Fed. R. Civ. P. 4(f)(1), plaintiff should have attempted to serve process on defendants pursuant to the Hague Convention before contracting a private process server such as Borg.  However, the Court finds that plaintiff's attempt to effect service of process through Borg did not negate its subsequent compliance with the service of process protocol outlined in Fed. R. Civ. P. 4(f)(1).  That is, because plaintiff ultimately served process on defendants pursuant to Article 10(a) of the Hague Convention, see infra, its initial attempt to serve process through Borg does not invalidate the fact that plaintiff did in fact serve process on defendants pursuant to Fed. R. Civ. P. 4(f)(1).

U.S. 694, 698 (1988)).  Articles 2 through 6 of the Hague Convention establish the primary

method to effect service of process on a foreign defendant; namely, they "require[] each signatory

country to establish a Central Authority to monitor and ensure proper service."  Id.  Here,

plaintiff, by letter dated June 28, 2012, sent the Summons, Complaint, and Request for Service

Abroad of Judicial Documents to Nadine Auger of the Ontario Court of Justice in an effort to

personally serve defendants pursuant to Articles 2 through 6.  (Meola Certification ¶¶ 13–14,

ECF No. 9-2; Exh. D).  Plaintiff paid the requisite service fees, and on August 8, 13, and 14,

2012, Court Enforcement Officer B.G. Shaw tried to serve process on defendants at the Cornell

Meadows address.  (Id. ¶¶ 15–16; Exh. E).  However, on each occasion, he could not gain access

to the building to approach Suite A208; thus, he used the intercom to dial Suite A208 and left a

voice message on "Dannetta's" recorded answering machine.  (Id. ¶ 16; Exh. F).  Shaw never

received a response and, consequently, failed to personally serve process on defendants.  (Id.).

After plaintiff failed to effect service of process on defendants pursuant to Articles 2

through 6 of the Hague Convention, it sent by International Registered Mail and Regular Mail

dated June 29, 2012, copies of the Summons, Complaint, and Case Information Statement to

each defendant at the Cornell Meadows address.  (Id. ¶ 17; Exh. G).  Defendants returned the

International Registered Mail to sender, but they did not return the Regular Mail to plaintiff.  (Id.

¶¶ 18–19; Exh. H).

The issue, then, is whether plaintiff effected service of process pursuant to Fed. R. Civ. P.

4(f)(1) by mailing copies of the Summons and Complaint to defendants.  Whether plaintiff so

complied with Rule 4(f)(1) turns on whether its mailing constitutes service of process under

Article 10 of the Hague Convention.  Article 10 provides in pertinent part: "Provided the State of

destination does not object, the present Convention shall not interfere with- - (a) the freedom to send judicial documents, by postal channels, directly to persons abroad." Hague Convention, art. 10; see Roussel Corp., 23 F. Supp. 2d at 470. Article 21 allows signatory countries to the Hague Convention to object to service under Article 10(a), but "'Canada does not object to service by postal channels.'" EOI Corp. v. Medical Mktg., 172 F.R.D. 133, 138 (D.N.J. 1997) (concluding that Canada does not object to service of process under Article 10(a) and construing Article 10(a) to authorize an alternative method of service through postal channels) (quoting Hague Convention, Ancillary Laws and Directives, reprinted in U.S.C. on International Agreements at 282). Thus, because neither Canada nor the United States objects to service under Article 10(a), the inquiry turns to whether Article 10(a) in fact authorizes service of process "by postal channels."

"The controversy concerning Article 10(a) focuses on the divergence in the interpretation of one word – send. In particular, courts are divided on whether the phrase, 'freedom to send judicial documents,' was intended to include service of process." EOI Corp., 172 F.R.D. at 137. The United States Supreme Court and the Third Circuit Court of Appeals have not decided whether Article 10(a) permits service of process by postal channels. Id. at 140. The Second Circuit Court of Appeals, however, held that "the word 'send' in Article 10(a) was intended to mean 'service'." Ackermann v. Levine, 788 F.2d 830, 839 (2d Cir. 1986). It "acknowledged that the leading commentator on the Convention, Brian Ristau, reviewed the Rapporteur's report on the final text of the Convention and reached the 'inescapable' conclusion that use of 'send' rather than the otherwise consistently used 'service' must be attributed to careless drafting." EOI Corp., 172 F.R.D. at 137 (citing Ackermann, 788 F.2d at 839). The court relied in part on a

California state court case, which found that the language of Article 10(a) would be rendered "'superfluous unless it was related to the sending of such documents for the purpose of service.'" Ackerman, 788 F.2d at 839 (quoting Shoei Kako v. Superior Court, 33 Cal. App. 3d 808, 821–22 (1973)).  Third Circuit courts have generally adopted the Ackermann approach and found that Article 10(a) authorizes service of process by mail.  See Roussel Corp., 23 F. Supp. 2d at 471–74 (finding the Second Circuit's interpretation of Article 10(a) to be "persuasive"); EOI Corp., 172 F.R.D. at 142 (determining that Article 10(a) "empowers litigants to effectuate service of process through postal channels, provided that the State of destination does not object"); see also Gapanovich v. Komori Corp., 255 N.J. Super. 607, 613–14 (App. Div. 1992) (concluding that Article 10(a) allows service by mail because it is "the only construction which will achieve the [Hague] Convention's stated goal of effective, expeditious and inexpensive service, [and] . . . of providing a simpler way to serve process abroad"); but see Raffa v. Nissan Motor Co. Ltd., 141 F.R.D. 45, 46–47 (E.D. Pa. 1991) (eschewing the Ackermann approach in favor of Bankston v. Toyota Motor Corp., infra, because "if the drafters had intended for Article 10(a) to provide a means of service, the word 'service' would have been employed" rather than the word "send").

In addition to Third Circuit courts, other jurisdictions have found that Article 10(a) authorizes service of process by postal channels.  See R. Griggs Group Limited v. Filanto Spa, 920 F. Supp. 1100 (D. Nev. 1996); Zisman v. Sieger, 106 F.R.D. 194 (N.D. Ill. 1985); Chrysler Corp. General Motors Corp., 589 F. Supp. 1182 (D.D.C. 1984); Weight v. Kawasaki Heavy Indus., 597 F. Supp. 1082 (E.D. Va. 1984).  For example, the court in R. Griggs adopted the Ackermann approach because it found the "structure of the Convention and the placement of 10(a) within the Article 10 list of alternate methods of service . . . suggest[s] that the word 'send'

was used as a synonym for 'serve'." 920 F. Supp. at 1104.  In support of that structural

argument, the court noted that Articles 8 through 11 within Chapter 2 of the Hague Convention

establish alternative methods to serve process on foreign defendants; Article 10(b) and 10(c), for

instance, "provide for the use of judicial officers, officials, or other competent persons of a

contracting state to effect service." Id. at 1105.  Consequently, the court determined that "Article

10(a) would be anomalous if it related to a subject other than service." Id. ("In this context, it is

not surprising or incongruous that mail service would be another option available to the

transnational litigant. . . . The placement of one lone subprovision dealing with the mailing of

nonservice documents in the midst of fifteen articles addressing service of process, would be

inconsistent with the structure of the entire Convention").  In concluding that Article 10(a)

permits service of process by mail, the court relied on the well-settled principle that courts must

construe treaties more liberally than private agreements and pay particular attention to the

practical construction and context in which the written words are employed. Id. (citing

Volkswagenwerk, 486 U.S. at 700).

In contrast to the Ackermann approach, the Eighth Circuit Court of Appeals interpreted

literally the Hague Convention and concluded that Article 10(a) does not permit service of

process on a foreign defendant by way of postal channels because the word "send" in Article

10(a) is not equivalent to "service of process." Bankston v. Toyota Motor Corp., 889 F.2d 172

(8th Cir. 1989).  It noted that the word "service" is used in other sections of the Hague

Convention, and that if the drafters had intended for Article 10(a) to "provide an additional

manner of service of judicial documents, they would have used the word 'service.'" Bankston,

889 F.2d at 173–74.  The court grounded its determination in the well-settled mode of

13

construction that "where a legislative body 'includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [the legislative body] acts intentionally and purposely in the disparate inclusion or exclusion.'" Id. at 174 (quoting Russello v. United States, 464 U.S. 16, 23 (1983)).  Rather than permitting service of process by postal channels, the court held that Article 10(a) "merely provides a method for sending subsequent documents after service of process has been obtained by means of the central authority." Id. at 174; see Golub v. Isuzu Motors, 924 F. Supp. 324, 327–28 (D. Mass. 1996); Raffa, 141 F.R.D. at 46–47; Hantover, Inc. v. Omet, 688 F. Supp. 1377, 1385 (W.D. Mo. 1988).

In the absence of controlling precedent in the Third Circuit Court of Appeals, the Court here adheres to this District Court's general acceptance of the Ackermann approach as comporting more closely with the intent of the Hague Convention "to create appropriate means to ensure that judicial and extrajudicial documents [] served abroad [are] brought to the notice of the addressee in sufficient time."  Hague Convention, Preamble, reprinted in U.S.C. on International Agreements at 265.  As noted earlier, EOI Corp. followed the Ackermann approach because it was "not persuaded by those authorities who have applied a strict statutory construction of the [Hague Convention] . . . [as] there is a paucity of analysis in the majority of these cases."  172 F.R.D. at 141 (noting that the "overwhelming weight of scholarly authority in the field" supports the position that Article 10(a) permits service of process by mail).  See also Roussel Corp., 23 F. Supp. 2d at 471-74.  The Court is persuaded that the word "send" in Article 10(a) is synonymous with "serve" because Article 10(a) is within a list of alternate methods of service of process.  See R. Griggs, 920 F. Supp. at 1104 (reasoning that were Article 10(a) "intended only to preserve the right to use postal channels for non-service correspondence, it

would be out of place in Article 10, in Chapter 2, and indeed in the Convention itself").  Such

positioning within the structure of the Convention itself suggests that the drafters intended

Article 10(a) to provide another valid method of service of process, regardless of its use of the

word "send" rather than "serve."  See Roussel Corp., 23 F. Supp. 2d at 473 (determining that if

Article 10(a) merely provided a method for sending documents after service of process had been

effected, "it would have been illogical for the drafters to include it in the midst of provisions

addressing alternative methods of service").  In addition, subsequent to the Bankston decision,

the United States State Department issued a position letter advising that Bankston "is incorrect to

the extent that it suggests that the Hague Convention does not permit as a method of service the

sending of a copy of the summons and complaint by registered mail to a defendant in a foreign

country."  Letter from Alan J. Kreczko, U.S. Dep't of State Deputy Legal Advisor to the Admin.

Off. of U.S. Courts and the Nat'l Center for State Courts (Mar. 14, 1991), excerpted at 30 I.L.M.

260.  Though not dispositive, courts often give great weight to treaty interpretations provided by

the Executive Branch, and the Court here accords it due consideration.  See Rest. 3d of Foreign

Relations Law of the United States § 326(2) (1986).

Because the Court finds that Article 10(a) of the Hague Convention permits service of

process through postal channels, plaintiff properly served defendants pursuant to Article 10(a) by

sending copies of the Summons and Complaint via Regular Mail, dated June 29, 2012, to

defendants at the Cornell Meadows address.  (See Meola Certification ¶ 17, Oct. 4, 2012, ECF

No. 9-2; Exh. G).  Defendants never returned to sender the Regular Mail,[4] which indicates that

---

[4] Defendants did not claim the International Registered Mail; instead, those pieces of mail
were returned to sender.  (Meola Certification ¶ 18, ECF No. 9-2; Exh. H).  The Court does not
(continued...)

they have in fact received the copies of the Summons and Complaint.  (Id. ¶¶ 19, 23).  Further,

defendants had adequate actual notice of the instant lawsuit because, as set forth above, on

December 29, 2011, Meola sent a letter to defendants at the Cornell Meadows address notifying

them that his firm had conducted an investigation of the sprinkler head incident on behalf of

plaintiff, and had determined that the total property damage loss was approximately $450,000.

(Id. ¶ 5; Exh. A).  He advised defendants to "plac[e] [their insurance carrier] on notice of a

potential claim arising out of this loss" and warned that if they did not contact plaintiff within ten

(10) days of receipt of the letter, plaintiff would file a lawsuit against them in New Jersey.  (Exh.

A to Meola Certification, ECF No. 9-2).  Thus, defendants had actual notice of the instant

litigation, particularly when considered in light of Meola's unchallenged certification that Smith

called him upon receipt of the December 29, 2011, letter to deny liability and that Elaine Gordon,

Esq., called him upon defendants' request to inquire further about the matter.  (Meola

Certification ¶¶ 6–7, ECF No. 9-2); see Roussel Corp., 23 F. Supp. 2d at 474 ("The purpose of

the rules governing service of process is to insure that parties receive actual notice of claims

against them.") (citing Hanna v. Plumer, 380 U.S. 460, 462 n.1 (1965)); Gambone v. Lite-Rock

Drywall Corp., 124 Fed. Appx. 78, 79 (3rd Cir. 2005) (noting that actual notice, rather than

personal delivery of service of process, is sufficient where such personal service cannot be

accomplished due to evasive defendants).  Moreover, even though plaintiff attempted but failed,

---

[4](...continued)
comment on whether plaintiff properly effected service of process by International Registered
Mail, but it notes that the "rules governing service of process are not designed to create an
obstacle course for plaintiffs to navigate, or a cat-and-mouse game for defendants who are
otherwise subject to the court's jurisdiction."  TRW, Inc. v. Derbyshire, 157 F.R.D. 59, 60 (D.
Colo. 1994).

on several occasions, to personally serve defendants via Borg and the Ontario Court of Justice, plaintiff nonetheless provided some semblance of actual notice to defendants through those attempts.  (<u>See</u> Meola Certification ¶¶ 2–8, 15–16, ECF No. 9-2; Exhs. C, F).

In sum, the Court finds that plaintiff has satisfied its burden of showing that it properly effected service of process on defendants by an internationally agreed means of service that is reasonably calculated to give notice – Article 10(a) of the Hague Convention.  Plaintiff's failure to effect personal service of process pursuant to Articles 2 through 6 does not invalidate its subsequent service of process by postal channels.  <u>See</u> <u>Roussel Corp.</u>, 23 F. Supp. 2d at 474 n.19 ("[S]ince [plaintiff's] service of process under Article 10(a) was effective, its failed attempt to serve [defendant] by personal service is of no consequence.").  Thus, plaintiff complied with Fed. R. Civ. P. 4(f)(1) because it served defendants by Regular Mail dated June 29, 2012, pursuant to Article 10(a).

## B.  Entry of Default Judgment is Warranted

As set forth above, default judgment is governed by Fed. R. Civ. P. 55.  Rule 55(a) provides, in relevant part:  "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Here, plaintiff filed a motion for entry of default (ECF No. 5) and provided a certification in support of that motion (ECF No. 5-1).  Accordingly, the Clerk of the Court entered default as to defendants for their failure to plead or otherwise defend on August 10, 2012.  Thus, plaintiff now seeks the Court's entry of a default judgment under Rule 55(b)(2).  <u>See</u> <u>Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds</u>, 250 F.R.D. 171, 177 (D.N.J. 2008).  To enter a default judgment pursuant to Fed. R. Civ. P. 55(b)(2), the Court

must "ascertain whether the unchallenged facts constitute a legitimate cause of action." Wong, 2012 U.S. Dist. LEXIS 168446, at *3 (citing Universe Techs., 2011 U.S. Dist. LEXIS 1600, at *7) (internal quotation marks omitted). "Default judgment is permissible only if the plaintiff's factual allegations establish a right to the requested relief." Id. (citation omitted) (internal quotation marks omitted).

Here, plaintiff has set forth well-pleaded factual allegations that constitute a legitimate cause of action with respect to its negligence claim and its breach of contract claim.[5] First, to state a claim for negligence, a plaintiff must allege that (1) defendant owed plaintiff a duty of care; (2) defendant breached that duty of care; and (3) plaintiff suffered an injury that is a proximate cause of defendant's breach. Mercado v. Bank of Am., N.A., No. 12-1123 (WJM), 2012 U.S. Dist. LEXIS 163395, at *9–10 (D.N.J. Nov. 15, 2012) (citing Endre v. Arnold, 300 N.J. Super. 136, 142 (App. Div. 1997)). Here, plaintiff alleges that defendants, as guests in the Hotel, owed plaintiff a duty to "exercise reasonable care in safeguarding and protecting [p]laintiff's property from loss or damage while the room was entrusted to their care." (Compl. ¶ 12). Plaintiff also alleges that defendants breached that duty because they failed to exercise reasonable care in protecting plaintiff's property, as their carelessness and negligence while alone in the Hotel room directly and proximately caused the sprinkler head to discharge. (Id. ¶¶ 9, 13). Plaintiff further alleges that it suffered extensive property damage, lost income, and interruption of its business as a proximate cause of defendant's breach. (Id. ¶¶ 10, 14). Based on these well-

---

[5] Because the Court finds liability under plaintiff's negligence claim (Count 1) and breach of contract claim (Count 2), and it does not appear that Count 3 seeks relief separate and apart from Counts 1 or 2, the Court declines to address plaintiff's theory of liability under the Hotel and Multiple Dwelling Law, N.J.S.A. 55:13A-1 et seq. (Count 3). (See Compl., ECF No. 1).

pleaded factual allegations and accepting them as true, the Court finds that plaintiff has set forth a legitimate cause of action with respect to its negligence claim (Count 1).

Second, to state a claim for breach of contract, a plaintiff must allege (1) the existence of a valid contract between plaintiff and defendant; (2) breach of that contract by defendant; (3) that plaintiff performed all obligations under the contract; and (4) that plaintiff incurred damages as a result of defendant's breach. Dattilo Realty v. Chevron, U.S.A., Inc., No. 09-2278 (ES), 2012 U.S. Dist. LEXIS 182575, at *7–8 (D.N.J. Dec. 28, 2012) (citations omitted); Crepy v. Benckiser, No. 12-2557 (WJM), 2013 U.S. Dist. LEXIS 1963, at *8 (D.N.J. Jan. 7, 2013). Here, plaintiff alleges that defendants entered into a valid contract with plaintiff upon checking into the Hotel, signing the relevant documentation, and securing their room with defendant Gager's credit card. (Compl. ¶¶ 8, 16). One of the terms of that valid contract, plaintiff alleges, was that defendants agreed "to be financially responsible for all incidentals incurred during occupancy of their room, including any property damage they caused to the room itself." (Id. ¶ 17). Plaintiff claims that defendants breached those terms "by carelessly causing the sprinkler head in their room to discharge causing extensive water damage to [p]laintiff's property." (Id. ¶ 18). Plaintiff also alleges that it performed its obligations under the contract because it operated the Hotel during the week in which defendants occupied the room, and plaintiff itself did not cause the sprinkler head in defendants' room to discharge. (Id. ¶¶ 6–7, 9). Finally, plaintiff claims that it suffered damages as a direct and proximate result of defendants' breach of contract. (Id. ¶ 19; Karmozyn Aff. ¶¶ 5–8, ECF No. 7-2). Based on these well-pleaded allegations and accepting them as true, the Court finds that plaintiff has set forth facts sufficient to state a legitimate cause of action for breach of contract (Count 2).

Having determined that plaintiff has stated viable causes of action with its negligence and breach of contract claims, the Court must consider the following factors in deciding whether to enter a default judgment against defendants: (1) whether plaintiff would suffer prejudice if the default judgment is not granted; (2) whether defendants have a meritorious defense; and (3) whether defendants' delay was the result of culpable misconduct. Wong, 2012 U.S. Dist. LEXIS 168446, at *9 (citing Ford v. Consigned Debts & Collections, Inc., No. 09-3102 (NLH), 2010 U.S. Dist. LEXIS 135385, at *10 (D.N.J. Dec. 21, 2010)). First, the Court finds that plaintiff will suffer prejudice in the absence of a default judgment because defendants have failed to appear in the case, leaving plaintiff no other recourse than filing for a default judgment. See Wong, 2012 U.S. Dist. LEXIS 168446, at *9. Defendants have not participated in the litigation despite being served process pursuant to Article 10(a) of the Hague Convention, and "[a] properly-served defendant who fails to appear should expect that a judgment may be entered against it." Id. at 9–10 (citations omitted). Put simply, defendants' refusal to appear in the matter has already prejudiced plaintiff by hindering its ability to litigate the case. Due to defendants' unresponsiveness, moreover, plaintiff has been forced to file several motions and to expend valuable time and resources. See Ramada Worldwide Inc. v. NPR Hospitality Inc., No. 06-4966 (JBS), 2008 WL 163641, at *4 (D.N.J. Jan. 16, 2008) (finding prejudice where a party "fail[ed] to comply with the court orders and participate in [the] litigation"). Here, if the default judgment is not granted, plaintiff would suffer further prejudice because it would be forced to incur additional, unnecessary costs, and would have no means to seek relief for their claims.

Second, whether defendants have a meritorious defense depends on whether "the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would

constitute a complete defense." <u>Ford</u>, 2010 U.S. Dist. LEXIS 135385, at *4 (citations omitted) (internal quotation marks omitted).  However, "[a] court cannot consider a defendant's defenses when it fails to respond to an action." <u>Wong</u>, 2012 U.S. Dist. LEXIS 168446, at *10.  In fact, "courts in the District of New Jersey have found that when a defendant fails to answer a complaint, it is practically impossible to determine whether that defendant has a meritorious defense." <u>Id.</u> at 11.  Here, the Court finds that it cannot ascertain whether defendants have a meritorious defense because they have declined to litigate the case, or answer plaintiff's April 9, 2012, Complaint, or oppose plaintiff's application for default judgment.  As such, this factor, like the first factor, weighs in favor of granting plaintiff's motion for entry of a default judgment.

As to the third factor, defendants are "'presumed culpable where [they have] failed to answer, move, or otherwise respond.'" <u>Id.</u> (quoting <u>Slover v. Live Universe, Inc.</u>, No. 08-02645 (GEB), 2009 U.S. Dist. LEXIS 17919, at *2 (D.N.J. Mar. 9, 2009)).  Here, defendants have failed to answer the Complaint, file a pre-answer motion, or respond to plaintiff's motion for default judgment.  Therefore, the third factor is satisfied.

The Court acknowledges that an entry of a default judgment is "a sanction of last resort." <u>Brady</u>, 250 F.R.D. at 177 (citing <u>Poulis v. State Farm & Casualty Co.</u>, 747 F.2d 863, 867–68 (3d Cir. 1984)).  Because it is generally disfavored, courts should, in doubtful cases, set aside entries of default or default judgments in order to allow cases to be decided on their merits.  <u>United States v. $55,518.05 in U.S. Currency</u>, 728 F.2d 192, 194–95 (3d Cir. 1984); <u>Poulis</u>, 747 F.2d at 867–68 (characterizing a default judgment as a "drastic" and "extreme" sanction).  However, the U.S. Supreme Court has held that "the most severe in the spectrum of sanctions . . . must be available . . . in appropriate cases, not merely to penalize those whose conduct may be deemed to

warrant such a sanction, but to deter those who might be tempted to such conduct in the absence

of such a deterrent." Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 643

(1976).  But for the reasons set forth above, the Court finds that entry of a default judgment is

appropriate.  Plaintiff made numerous efforts to serve process and effectively served process, and

the record suggests that defendants actively tried to avoid service of process after they were

provided actual notice of the impending litigation by way of plaintiff's counsel's December 29,

2011, letter.  (See Meola Certification ¶¶ 2–16, ECF No. 9-2; Exh. A).  Further, defendants

declined to appear or otherwise participate in the matter, including opposing the instant motion,

after plaintiff served them via Regular Mail.  (Id. ¶¶ 17–23).   Consequently, entry of default

judgment is warranted.

## IV.   CONCLUSION

For the reasons stated above, the Undersigned respectfully recommends that:

1.   Plaintiff's motion for entry of a default judgment against defendants be granted solely as to liability;

2.   the Court reserve on the issue of damages;

3.   the Court require plaintiff to submit a brief, complete with supporting affidavits and documentation, setting forth the factual and legal basis as to why it is entitled to the specific amount of damages that it seeks[6]; and

4.   the Court require plaintiff provide notice to defendants and a copy of its

---

[6] Plaintiff submitted the Affidavit of John Karmozyn, Senior Property Adjuster for Liberty Mutual Fire Insurance Company, in support of the instant application.  (Aff. of John Karmozyn, Oct. 4, 2012, ECF No. 9-3).  Although the Karmozyn Affidavit states that Liberty Mutual paid plaintiff $512,389.05 (following a $50,000 deductible) because of the incident and provides plaintiff's proof of loss, plaintiff's application provides no other documentation or accounting of the damages to sustain its entitlement to the $562,389.05 it seeks.  Plaintiff should provide such additional documentation or proofs as it deems appropriate in its subsequent application.

application, and notice of the date and time of any proof hearing before the Court.

The parties have fourteen days to file and serve objections to this Report and

Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c)(2).


Date: January 24, 2013                              **s/_Michael A. Hammer_____**
                                                    **UNITED STATES MAGISTRATE JUDGE**